UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| PAULA LEOLA WILLIAMS, | Case No. 1:17-cv-00268-BAM |
|---|---|
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

I.     **INTRODUCTION**

Plaintiff Paula Williams ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1] Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge Barbara A. McAuliffe. (Docs. 7, 8).

1

## II. BACKGROUND

Plaintiff applied for benefits on April 9, 2014, alleging disability beginning June 21, 2013, due to back pain and mental health impairments. AR 199-211. Her application was denied initially and on reconsideration. AR 156-158. On June 30, 2016, a hearing was held before Administrative Law Judge ("ALJ") John Heyer. AR 30-64. Plaintiff appeared and testified along with her attorney. AR 30. The ALJ also heard testimony from Susan Green, a vocational expert. AR 60.

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 21, 2013, the alleged onset date. AR 15. The ALJ identified: spinal abnormalities, Hepatitis C, obesity and affective disorder as severe impairments. AR 15. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 16.

Based on his review of the entire record, the ALJ found that Plaintiff had the following residual functional capacity (RFC):

> To perform light work except that she could lift 20 pounds; complete an eight-hour workday if given the option to alternate between sitting and standing in 30-minute increments; and [she] is limited to simple repetitive tasks.

AR 18.

Applying this RFC, the ALJ found that Plaintiff could not perform her past relevant work as a home attendant. AR 23. However, considering Plaintiff's age (50 years old), high school education, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 23. Following the ALJ's decision dated August 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. AR 1-6. This appeal followed.

## III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION [2]

Plaintiff offers a single argument in support of her claim that the Commissioner's decision should be reversed. Plaintiff contends that the ALJ impermissibly rejected portions of the opinion of examining psychologist Nancy Nikkel, Ph. D without providing specific and legitimate reasons. (Doc. 15 at 8). Plaintiff does not challenge the ALJ's assessment of her physical impairments or her credibility.

### 1. Legal Standard

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." *Lester*, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts, *see, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence), however, such selective reliance must be consistent with the medical record as a whole. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Moreover, although "[a]n ALJ is not entitled to pick and choose through a physician's opinion," *Sklenar*

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

3

*v. Barnhart*, 195 F. Supp. 2d 696, 703 n.6 (W.D. Pa. 2002) (citations and quotation omitted), he may give specific and legitimate reasons for declining to adopt part of an opinion. *See Magallanes*, 881 F.2d at 755 (declining to adopt physician's opinion about onset date). *See Ward-White v. Astrue*, No. 2:07-cv-1616 GGH, 2009 U.S. Dist. LEXIS 18088, 2009 WL 617814, at *5 (E.D. Cal. Mar. 10, 2009).

### 2. The Opinions of Plaintiff's Examining Psychologists – Drs. Schmidt and Nikkel

On September 13, 2014, Plaintiff attended a psychiatric consultative examination with Gil Schmidt, Psy. D. AR 442-49. Upon examination, Plaintiff stated that her mental health problems began at the age of 15, when she argued with her boyfriend and he shot her in the back. AR 443. She walked with a normal gait and did not appear in significant physical pain despite alleging daily back pain at a level 9 or 10. AR 442-43. Dr. Schmidt noted various inconsistencies in Plaintiff's interview. For example, Dr. Schmidt noted that Plaintiff's medical records from Kaiser Permanente did not corroborate Plaintiff's report of taking Seroquel. AR 444. Dr. Schmidt also questioned the veracity of Plaintiff's comments regarding accessing mental health services at the age of 15. Plaintiff "was defensive" when asked about recent alcohol use after disclosing that she regularly consumed alcohol and drugs since adolescence. AR 444-45. Likewise, she was "extremely defensive" in discussing her sleep patterns despite alleging "extreme difficulty with sleep" after being shot. AR 446. She "could not identify any specific theme" and "became baffled" when asked to describe the repetitive nightmares she alleged. AR 446. Further, her report of hearing gunshots "appeared inconsistent with relevant professional literature." AR 447. Dr. Schmidt reported that at the end of the interview, Plaintiff asked what benefits she would receive. AR 447.

Dr. Schmidt diagnosed malingering; rule/out alcohol dependence; rule out polysubstance dependence; nicotine dependence; personality disorder, features of narcissism; and GAF score of 71-80. AR 447-448. Dr. Schmidt opined that Plaintiff did not suffer from any functional mental health limitations. AR 448-449.

Six months later, on March 28, 2015, Plaintiff attended a second consultative examination with Nancy Nikkel, Ph.D. AR 450-455. Plaintiff demonstrated agitation during evaluation; loose thought processes; and irrelevant and suspicious speech content. AR 452. Plaintiff indicated hallucinations and delusions and her thought content was fixed upon the harm being done to her by others. AR 452.

Plaintiff's mood vacillated between angry and she banged her walker on the floor when she became agitated during the evaluation. AR 452. In intellectual functioning, Plaintiff demonstrated impaired immediate recall; impaired past memory; impaired fund of knowledge; difficulty performing calculations; impaired concentration; impaired abstract thinking; impaired insight and judgment; and an inability to differentiate appropriately. AR 453.

Dr. Nikkel diagnosed psychotic disorder and "sibling relational problems." AR 454. Dr. Nikkel stated that "it was not clear whether the claimant was exaggerating her symptoms. There were no inconsistencies throughout the evaluation." AR 454. She assessed Plaintiff's level of functioning as follows: 1) not capable of managing her own funds; 2) not capable of performing simple and repetitive tasks or detailed or complex tasks; 3) not capable of accepting instructions from supervisors, coworkers, and the public; 4) not capable of performing work activities on a consistent basis; 5) not capable of dealing with usual stress; 6) and poor ability to maintain attendance in the workplace and complete a normal workday. AR 454-455.

In weighing the opinions of Plaintiff's examining psychologists, the ALJ found as follows:

> As for the medical opinion evidence, the undersigned gives some weight to the opinions of psychiatric consultative examiners Drs. Schmidt and Nikkel. While their opinions differ regarding Plaintiff's mental limitations, with Dr. Schmidt finding no limitations, and Dr. Nikkel finding extreme limitations, their opinions are general consistent with their respective medical findings and thorough examinations. During Dr. Schmidt's examination, he found evidence of malingering, which is somewhat consistent with what other treatment providers found, thus, his opinion that the claimant had no functional limitations is reasonable. Similarly, the claimant's presentation during Dr. Nikkel's examination is consistent with her ultimate findings. However, based on a review of the medical evidence as a whole, the undersigned ultimately finds that the claimant does have a severe mental impairment, but that it would not cause more than a limitation to simple repetitive tasks. This is based on some of the mental status examinations showing depressed mood and affect, as well as assigned GAF scores indicating moderate symptoms.

AR 22.

### 3. The ALJ Did Not Err in Weighing the Examining Opinions

The opinion of examining physician Dr. Nikkel was contradicted by the opinions of examining physician, Dr. Schmidt, and the state agency psychological consultants. Thus, the ALJ was required to provide specific and legitimate reasons to reject Dr. Nikkel's opinion. The ALJ did so.

5

First, the ALJ found that Dr. Nikkel's opinion, while consistent with her own examination, was inconsistent with the "medical evidence as a whole." AR 22. If supported by substantial evidence, this constitutes a valid reason for discounting the opinion of an examining physician. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Nikkel opined that Plaintiff is markedly limited in all areas of functioning. As the ALJ found however, the record does not provide objective evidence supporting Dr. Nikkel's extreme limitations.

For example, the ALJ noted that Plaintiff's assigned GAF scores did not indicate more than moderate limitations. AR 22. Plaintiff received a GAF score of 51-60 in March 2014, and Dr. Schmidt assigned a GAF score of 71-80 in September 2014. AR 418. A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning that is used to plan treatment and to measure the impact of treatment as well as to predict its outcome. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed., text revision) (DSM–IV–TR). A GAF score of 51-60 corresponds to moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* A GAF between 71 and 80 indicates a person with no more than a slight impairment in social, occupational, or school functioning (e.g., temporary falling behind in schoolwork). *Id.* The ALJ reasonably recognized the discrepancy between the scores—reflecting at most moderate symptoms or impairment—and Dr. Nikkel's opinion reflecting a far more serious level of impairment. AR 22.

The ALJ also noted that Plaintiff's mental status examinations did not demonstrate the severe limitations found by Dr. Nikkel. AR 22. Indeed, throughout the record, there were numerous instances of normal mental status examinations, negative evaluations for depression, and an overall lack of treatment for Plaintiff's mental health impairments. AR 19, 417-18, 527, 531, 542, 546, 552-53, 568, 577-78, 585-86, 617-18. Such consistently mild to moderate findings fail to support Dr. Nikkel's extreme opinion that Plaintiff is incapable of basic functioning. Thus, substantial evidence supports these reasons for rejecting Dr. Nikkel's opinion. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). (even if the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld because substantial evidence supports it).

Second, in assessing Dr. Nikkel's findings, the ALJ gave some weight to the opinions of the state agency psychological consultants, Drs. Brown and Dalton, who affirmed Dr. Schmidt's opinion, and found that Plaintiff did not have any functional limitations or a severe mental impairment. AR 22, 71, 105-06. Although the ALJ declined to fully credit the state agency physicians because there was at least some evidence in the record demonstrating that Plaintiff is "slightly" limited in her functioning, Dr. Nikkel's opinion was properly rejected as an outlier. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"). Of the medical opinions addressing Plaintiff's mental health functioning in the record, three out of four of those opinions found that Plaintiff had no limitations in her mental health functioning. AR 22. The ALJ legitimately concluded that Dr. Nikkel's opinion was unsupported by the other evidence in the record and thus entitled to less weight.

Finally, the ALJ noted that the objective medical evidence, which included suspicions of malingering and a lack of treatment history, undermined Dr. Nikkel's findings that Plaintiff could not complete "simple repetitive tasks." AR 22. The ALJ found that the evidence of malingering opined by Dr. Schmidt was "somewhat consistent with what other treatment providers found." AR 22. The ALJ found that Plaintiff exaggerated her symptoms and that although Dr. Nikkel "diagnosed [Plaintiff] with a psychotic disorder and ultimately found poor abilities [in] multiple areas of mental functioning;" "it was unclear to Dr. Nikkel whether [Plaintiff] was exaggerating her symptoms." AR 20.

As pointed out by the ALJ, there was ample evidence in the record of malingering which suggests that Plaintiff may have misreported or exaggerated her symptoms in the examination with Dr. Nikkel. AR 20, 503. The ALJ noted that on February 20, 2015, when asked her desired outcome during a hospitalization for suicidal ideation Plaintiff stated that she wanted someone to "give [her] a piece of paper that says [she's] unstable." AR 20, 503. Other evidence noted by the ALJ includes the ALJ's finding that Plaintiff used a walker that was not prescribed by any provider. AR 21. Plaintiff had a normal gait in Dr. Schmidt's examination, but used a self-prescribed walker for Dr. Nikkel's examination just six months later. AR 444-48. Dr. Schmidt also concluded that Plaintiff was "intentionally fabricating symptoms for possible secondary gain." AR 20. This is substantial evidence

supporting the ALJ's decision to reject the more severe aspects of Dr. Nikkel's examination in light of Plaintiff's suggested malingering.

Overall, the ALJ weighed Dr. Nikkel's opinion against the findings of the other physicians and found that Dr. Nikkel's opinion regarding the severity of Plaintiff's limitations was overly restrictive given the other benign evidence in the record. Ultimately, it is the ALJ's province to synthesize the medical evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."). Where, as here, the findings by Dr. Nikkel were contradicted by every other opinion in the record, the ALJ was required to do no more than provide specific and legitimate reasons for discounting that physician's opinion. *Lester*, 81 F.3d at 830-31. The ALJ did so here. Accordingly, reversal is not warranted.

## V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of the Commissioner of Social Security, and against Plaintiff Paula Williams.

IT IS SO ORDERED.

Dated: __September 26, 2018__     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE